IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

VIRGIL CLAYBORN SHELTON, JR.                                                                PLAINTIFF

v.                                    Civil No. 6:22-cv-06095-SOH-CDC

MAJOR OTTS, OFFICER MARTIN,                                                                DEFENDANTS
DEPUTY BAKER, and SERGEANT
STEPHENS (All of the Arkansas Division of
Community Correction Omega Unit)

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This is a civil rights action filed pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Motion for Summary Judgment on the Issue of Exhaustion. (ECF No. 17).

## I. BACKGROUND

Plaintiff filed his Complaint in the Eastern District of Arkansas on August 24, 2022. (ECF No. 1). It was transferred to this District on August 30, 2022. (ECF No. 4). Plaintiff is currently incarcerated in the Arkansas Division of Correction ("ADC") Varner Unit, but his claims concern events occurring during his incarceration in the Arkansas Division of Community Correction ("ACC") Omega Unit. (ECF No. 1).

Plaintiff first alleges that on July 8, 2022, Defendant Otts directed an officer to spray Plaintiff with pepper spray. (*Id*. at 4). Instead of being given an opportunity to shower to remove the pepper spray, Plaintiff says he was placed in a restraint chair, a bag was placed over his head, and he was kept in the chair from 7:00 pm until 1:08 am. (*Id*.). Plaintiff says Defendant Otts told

1

him he was not receiving a shower and "that was that." (*Id*. at 5). Plaintiff alleges he did not receive a shower for three days after being sprayed, was not taken to the infirmary, and did not receive any "eye solution." (*Id*. at 6, 7). Plaintiff describes that his body burned for three days, his eyesight is still blurry, and his neck is sore from Defendant Baker choking him. (*Id*. at 5). Plaintiff characterizes this claim as one for excessive force, denial of medical care, and conditions of confinement; names all four Defendants; and proceeds against them in their official and individual capacities. (*Id*. at 4).

In his second and third claims, Plaintiff repeats the allegations of the first claim against all four Defendants but in his third claim, adds additional details concerning Defendant Baker. (*Id*. at 8). Plaintiff alleges Defendant Baker choked him while he was in the restraint chair and when there was no need for Baker to hold his head or neck. (*Id*.). Plaintiff alleges Baker did so for a long time, maintaining the chokehold until Plaintiff was "almost out of breath." (*Id*.). Plaintiff seeks compensatory, punitive, and other damages. (*Id*. at 9). He seeks $60,000.00 in monetary damages. Plaintiff asks that Defendants Otts and Baker be fired. (*Id*.).

Defendants filed their Motion for Summary Judgment on December 16, 2022. (ECF No. 17). Defendants argue judgment in their favor is appropriate because Plaintiff never filed an ACC grievance concerning the July 8, 2022, incident. (ECF No. 18 at 2-3). They note Plaintiff was transferred from the ACC to the ADC on July 9, 2022. (*Id*. at 1). He filed an ADC grievance on July 15, 2022. (*Id*. at 2). ADC Grievance Coordinator Allison Cash received the grievance on July 19, 2022. When Cash determined the incident occurred in the ACC, she contacted Abigail Maloch, the ACC Omega Unit Grievance Coordinator. (*Id*.). Because the ADC and the ACC are separate divisions of the Department of Correction, they each have their own Administrative Directive controlling their respective grievance processes. (*Id*.) Maloch informed Cash that

2

Plaintiff must file an ACC grievance using an ACC grievance form. Cash returned Plaintiff's grievance, advised him he needed to use the ACC form, and enclosed a copy of the ACC form with the returned ADC grievance. (*Id*.).

On July 28, 2022, Cash received a second ADC grievance from Plaintiff regarding the incident. (*Id*.). The grievance was rejected because the incident being grieved occurred at the ACC, not the ADC, and was therefore not grievable under the ADC grievance policy. (*Id*.). Cash reminded Plaintiff that he needed to follow the ACC's grievance procedure and provided him with a copy of the relevant section of ACC policy. (*Id*.). Plaintiff did not seek any assistance from Cash in submitting the grievance to the ACC, and never submitted any ACC grievances to the ACC concerning this incident. (*Id*. at 2-3).

Defendants attached copies of both ADC grievances as exhibits to the Declaration of Grievance Coordinator Cash. The grievance Plaintiff submitted on July 15, 2022, repeats the allegations in his Complaint. (ECF No. 18-1). The response indicates ADC staff spoke with Defendants Otts, who reported Plaintiff was given copious amounts of water to decontaminate and was examined by medical staff before being placed in the restraint chair. (*Id*. at 1). An email dated July 19, 2022, indicates Cash sent an email to Abigail Morrow[1] concerning the grievance. (*Id*. at 2). For SNN22-0018, the "Actions Taken" section of the grievance system notes the grievance was rejected as non-grievable on July 28, 2022. The next sentence indicates: "This incident occurred in the ACC custody. [Plaintiff] has been advised to follow ACC Grievance Procedures." (*Id*. at 6). Plaintiff's grievance appeal was denied on August 4, 2022. (*Id*.).

Plaintiff responded on December 28, 2022, (ECF No. 22), but failed to submit a separate Statement of Facts as required by the Local Rules and the Court's Order. Plaintiff does not dispute

---

[1] The Court will infer that this is the same individual as Abigail Maloch.

3

that he failed to submit an ACC grievance concerning the alleged incident on July 8, 2022. Instead, Plaintiff argues he never received any ACC forms. (*Id*. at 2). He then argues he exhausted ADC grievance SNN22-00018 concerning the incident, and this was the only grievance process available to him because he was transferred to the ADC immediately after the incident. (*Id*. at 4, 7-14). Plaintiff attaches copies of the grievance. The Step Two formal grievance was submitted on July 28, 2022, and rejected because it was non-grievable. (*Id*. at7). Plaintiff appealed, stating he still needed to exhaust his remedies. (*Id*.). The appeal was rejected as well. (*Id*. at 9). Plaintiff further argues that the two grievance coordinators, Cash and Maloch, are "clearly friends and clearly will lie for each other." (*Id*. at 2).

Defendants replied on December 29, 2022, (ECF No. 24), noting Plaintiff failed to file a Statement of Facts with his Response and that Defendant's facts should therefore be deemed admitted and judgment granted in their favor. (ECF No. 24 at 1). Defendants also argue Plaintiff's response contains unsworn factual allegations that were not executed under penalty of perjury and should not be considered for the purposes of summary judgment. (*Id*. at 2).

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  ANALYSIS

#### A.  Plaintiff's Failure to Comply with Local Rules

Local Rule 56.1(a) requires any party moving for summary judgment to submit a separate statement of undisputed material facts. Local Rule 56.1(b) requires the non-moving party opposing the summary judgment motion to file a separate statement of disputed facts. *Pro se* inmates are advised of this requirement in the Order directing them to file a summary judgment response, and are also advised of this requirement in the District's Prisoner Litigation Guide, which contains an example to help them understand the concept of using the same paragraph numbering as that used by the moving party in their own statement of disputed facts.

Due to Plaintiff's failure, both Statements of Facts submitted by the Defendants are deemed admitted pursuant to Local Rule 56.1(c). In determining whether there are genuine disputes of material fact, however, the Court has also considered the allegations set forth in Plaintiff's verified Amended Complaint. A verified complaint is the equivalent of an affidavit for summary judgment purposes. *See, e.g., Roberson v. Hayti Police Dep't*, 241 F.3d 992, 994-95 (8th Cir. 2001). "[A] complaint signed and dated as true under penalty of perjury satisfies the requirements of a verified

5

complaint . . ..” *Id*. As the Court in *Roberson* pointed out, "[a]lthough a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit to survive the summary judgment motion. *Id*. The Court will, therefore, "piece[] together [Plaintiff's] version of the facts from the verified complaint . . . ." *McClanahan v. Young*, No. 4:13-cv-04140, 2016 WL 520983, *1 (D.S.D. Feb. 5, 2016).

### B.  Exhaustion

Based on the summary judgment record, it is undisputed that Plaintiff failed to exhaust his administrative remedies against any Defendant in this case. The Prison Litigation Reform Act ("PLRA") mandates exhaustion of available administrative remedies before an inmate files suit. Section 1997e(a) of the PLRA provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S. C. § 1997e(a).

In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded that "exhaustion [as required by the PLRA] is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id.* at 219. "[T]o properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id.* at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.*

The Eighth Circuit Court of Appeals has recognized only two exceptions to the PLRA exhaustion requirement: (1) when officials have prevented prisoners from utilizing the grievance

procedures, or (2) when the officials themselves fail to comply with the grievance procedures. *See Gibson v. Weber,* 431 F.3d 339, 341 (8th Cir. 2005) (explaining a prisoner is only required to exhaust those administrative remedies that are "available" and any remedies that prison officials prevent a prisoner from utilizing are not considered available).

Plaintiff does not dispute that he failed to file an ACC grievance concerning the incident. Instead, he argues the ACC process was not available to him, as he was transferred to the ADC the next day. As noted in the above section, Defendants' facts have been deemed admitted. They have provided both sworn declarations and objective evidence that Plaintiff was advised to follow ACC procedure and was given the forms to do so. Plaintiff does not reference grievances or exhaustion in his verified Complaint. His response is not sworn under penalty of perjury and provides no objective evidence to counter that provided by Defendants. Instead, he speculates that the two grievance coordinators will lie for each other, which is insufficient to survive a motion for summary judgment. *See National Bank*, 165 F.3d at 607 ("A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment."). Accordingly, Plaintiff's allegations concerning administrative exhaustion are contradicted by the evidence such that no reasonable jury could believe him. Plaintiff failed to exhaust his administrative remedies for his claims in this case, and summary judgment is required as a matter of law.

### IV.  CONCLUSION

Accordingly, it is recommended that Defendants' Motion for Summary Judgment on the Issue of Exhaustion (ECF No. 17) be **GRANTED** and Plaintiff's Complaint **DISMISSED WITHOUT PREJUDICE.**[2]

---

[2] Claims that are barred for failure to exhaust administrative remedies are dismissed without prejudice. *See Sergent v. Norris*, 330 F.3d 1084, 1085 (8th Cir. 2003).

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED** this **13th day of April 2023**.

                                                                                *Christy Comstock*
                                                         CHRISTY COMSTOCK
                                                         UNITED STATES MAGISTRATE JUDGE